TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KAREN E. ESCALANTE (Cal. Bar No. 304686)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3358
     Facsimile: (213) 894-6269
     E-mail:    karen.escalante@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 19-CR-00760-TJH-01 |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO PRESENTENCE REPORT AND SENTENCING POSITION FOR DEFENDANT ZAMIR SIDDIQI; EXHIBITS 1-3 |
| v. | |
| ZAMIR SIDDIQI, | Sentencing Date:   05/03/2021 |
| Defendant. | Hearing Time:      10:00 a.m. Location:   Courtroom of the Hon. Terry J. Hatter |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Karen E. Escalante, hereby files its Objections to the Presentence Investigation Report and Sentencing Position for defendant ZAMIR SIDDIQI.

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report ("PSR"), and such further evidence and argument

as the Court may wish to consider at the time of sentencing.

The government reserves the right to file any supplemental sentencing position that may be necessary.

Dated: April 13, 2021                    Respectfully submitted,

                                         TRACY L. WILKISON
                                         Acting United States Attorney

                                         BRANDON D. FOX
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                               /s/
                                         KAREN E. ESCALANTE
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant ZAMIR SIDDIQI ("defendant") awaits sentencing after pleading guilty pursuant to a plea agreement to one count of false oaths in bankruptcy, in violation of 18 U.S.C. § 152(2).  (Dkt. 8, Plea Agreement; Dkt. 18, Minutes.)

On October 13, 2020, the United States Probation & Pretrial Services Office ("USPO") issued the presentence investigation report ("PSR") for defendant.  (Dkt. 24.)  The USPO calculated that defendant's total offense level under the United States Sentencing Guidelines ("USSG" or "Guidelines") was 17 and determined that defendant falls within Criminal History Category ("CHC") I, which results in an advisory Guidelines range of 24 to 30 months' imprisonment.  (Dkt. 177, PSR ¶¶ 37, 45, 99.)  The USPO further determined that the fine range for defendant's offense of conviction is between $5,000 and $50,000.  (PSR ¶ 107.)

The USPO recommended that the Court impose a six-month downward variance due to defendant's prior military service.  (See PSR ¶ 114; Dkt. 23, USPO Letter at 6.)  Accordingly, the USPO recommends a sentence of 18 months' imprisonment.  (Dkt. 23, USPO Letter at 2.)

The government concurs with the USPO's offense level calculations, but submits that the total intended loss is $536,322.77.  In addition, the government objects to the USPO's determination that defendant is unable to pay a fine.  For the reasons set forth below, the government submits that a low-end sentence of 24 months of imprisonment, three years of supervised release, and a fine within the applicable fine guideline range is justified and appropriate.

## II. STATEMENT OF FACTS

According to the PSR, from 2008 to 2010, defendant was a director for Lehman Brothers which became part of Barclays and earned $1.5 million per year. (PSR ¶ 85.) According to publicly available court filings, in connection with his employment with Barlcays, defendant accepted a $3,500,000 loan from Barclays, which Barclays agreed to forgive in annual installments provided defendant remained employed by Barclays. See Decl. of Jeffrey N. Goldberg in Support of Petition to Confirm Arbitration Award and Motion for Confirmation of Arbitration Award, Ex. 1, Promissory Note, Barclays Capital Inc., v. Zamir Siddiqi, 12-CV-09553-JAK (C.D. Cal. Nov. 7, 2012), ECF No. 4 (attached hereto as Exhibit 1). In February 2010, Barclays terminated defendant and sought repayment of $3,000,000. See Barclays Capital Inc.'s Opposition to Zamir Siddiqi's Motion to Vacate Arbitration Award at 3-4, Zamir Siddiqi v. Barclays Capital Inc., 13-CV-00634-JAK, (C.D. Cal. Mar. 15, 2013), ECF No. 12. In November 2012, a Financial Industry Regulatory Authority ("FINRA") arbitration panel awarded Barclay's $3,000,000, plus interest, attorneys' fees, and costs. See Decl. of Jeffrey N. Goldberg in Support of Petition to Confirm Arbitration Award and Motion for Confirmation of Arbitration Award, Ex. 3, FINRA Award, Barclays Capital Inc. v. Zamir Siddiqi, 12-CV-09553-JAK (C.D. Cal. Nov. 7, 2012), ECF No. 4 (attached hereto as Exhibit 2). In October 2013, Barclays obtained a $3.5 million civil judgment enforcing the FINRA award. See Judgment, Barclays Capital Inc. v. Zamir Siddiqi, 12-CV-09553-JAK (C.D. Cal. October 30, 2013), ECF No. 28 (attached hereto as Exhibit 3).

Two months later, on December 9, 2013, defendant filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California. (PSR ¶ 12.)  In accompanying Schedule A (Real Property), defendant identified the Manhattan Beach Residence as a real property in which he had an interest with a value of $1,200,000, and against which there was a secured claim of $782,300.88.  (Id.)  In Schedule D, defendant identified the secured claim as being held by Wells Fargo Home Mortgage.  (Id.)  Defendant also filed a Statement of Financial Affairs ("SFA") in connection with his bankruptcy petition.  (Id. ¶ 15.)  Although the SFA required defendant to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case[,]" defendant failed to disclose and concealed that on April 23, 2013, i.e., approximately seven months prior to the filing of the bankruptcy petition, defendant had sold an interest he held in Rosedown Associates, LLC ("Rosedown") for $200,000.  (Id. ¶ 13.)

On February 10, 2014, defendant appeared for, and testified under oath, at a Section 341(a) meeting of creditors.  (Id. ¶ 16.)  At that meeting, defendant testified that he had signed and read his bankruptcy papers, understood the information in his bankruptcy papers, was not aware of any mistakes, and had listed all of his assets and creditors.  (Id.)  Specifically, in response to the question regarding his bankruptcy papers, "Did you list all of your assets?" defendant responded "Yes, sir."  (Id.)  In fact, as defendant knew, at the time he filed his bankruptcy papers he had additional substantial assets that were not listed, including an

3

interest in Lagoon CCP, LLC ("Lagoon") and a checking account in his name at USAA Federal Savings Bank (the "USAA checking account"). (Id.)

On December 13, 2014—four days after filing for bankruptcy—defendant sold his ownership interest in Lagoon. (See id. ¶ 17.a.) And, on February 21, 2014--11 days after having appeared at the Section 341(a) meeting of creditors—without the knowledge and consent of the Chapter 7 Trustee, defendant deposited a $50,000 check for those proceeds in a checking account in his name at Bank of America. (Id.)

While bankruptcy proceedings were ongoing, and on September 29, 2014, defendant opened a savings account in his name at the Bank of Manhattan (the "Bank of Manhattan account") and concealed this account from the Chapter 7 trustee. (Id. ¶ 17.c.) And, on October 1, 2014, without the knowledge and consent of the Chapter 7 trustee, defendant sold the Manhattan Beach Residence for approximately $1,217,672. (Id. ¶ 17.d.) On that same day, defendant caused $361,372.77 of the proceeds he received from the sale of the Manhattan Beach Residence to be deposited into the Bank of Manhattan account without the knowledge and consent of the Chapter 7 trustee. (Id. ¶ 17.e.) The next day, defendant caused $356,362 to be wired from the Bank of Manhattan account and into the USAA checking account without the knowledge and consent of the Chapter 7 trustee. (Id.)

On or about October 7 and 10, 2014, defendant withdrew a portion of the proceeds of the sale of the Manhattan Beach Residence, namely $135,000 in cash, from the USAA checking account without the knowledge and consent of the Chapter 7 trustee. (Id. ¶ 17.f.) Between October 10, 2014, and January 26, 2015, without the knowledge

4

and consent of the Chapter 7 trustee, defendant used for his own purposes nearly all of the proceeds he received from the sale of the Manhattan Beach Residence. (Id. ¶ 17.g.)

## III. SENTENCING GUIDELINES CALCULATIONS & OBJECTIONS TO PSR

The USPO calculated the advisory Guidelines range as follows: a base offense level of six in accordance with USSG § 2B1.1(a)(2); a twelve-level enhancement pursuant to USSG § 2B1.1(b)(1)(I)(G) for a loss amount of more than $250,000, but less than $550,000; a two-level enhancement pursuant to USSG § 2B1.1(b)(9)(B) because the offense involved a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding; and a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a)-(b), resulting in a total offense level of 17. (PSR ¶¶ 25-37.) As discussed in further detail below, although the government agrees with the USPO's offense level calculations, the government objects to its loss calculations and submits that the total intended loss is $536,322.77.

The USPO further noted that although defendant has three prior state convictions for driving-related offenses, none of them garner criminal history points. (PSR ¶¶ 41-43.) Accordingly, the USPO concluded that defendant falls within CHC I. (PSR ¶¶ 44-45.) The government concurs with the USPO's calculation of defendant's CHC.

In addition, the PSR determined that defendant does not appear to have the ability to pay a fine in addition to restitution. The government objects to the USPO's determination that defendant is unable to pay a fine in addition to restitution.

**A.   Objection to Loss Calculation**

As set forth in the plea agreement, the government submits that the loss amount under the Guidelines is approximately $536,722.77. The government calculates intended loss as follows:

- $50,000 from defendant's concealment of the sale of his interest in Lagoon, plus
- $361,732.77 in proceeds that defendant received from the sale of the Manhattan Beach Residence and which he concealed, less a $75,000 homestead exemption, for a net loss of $286,372.77, plus
- $200,000 in proceeds that defendant received in April 2013 from the sale of his interest in Lagoon and which he concealed,
- for a total intended loss figure of $536,372.77.

Notably, the government's disagreement with the USPO on the loss figure does not affect the Guidelines calculation because the government's loss calculation is within the range of $250,000 and $550,000.  Accordingly, under the government's loss calculations, a twelve-level enhancement pursuant to USSG § 2B1.1(b)(1)(I)(G) still applies.

**B.   Objection to Defendant's Ability to Pay a Fine**

The Guidelines state that, "the court <u>shall</u> impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay."  USSG § 5E1.2 (a) (emphasis added).  Here, defendant has not made that showing, and a fine should be imposed.

In determining the amount of the fine, the court "shall consider" the following, among other things: "the need for the

6

combined sentence to reflect the seriousness of the offense . . . to promote respect for the law, to provide just punishment and to afford adequate deterrence"; "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources"; "any restitution or reparation that the defendant has made or is obligated to make;" and "the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed."  USSG §§ 5E1.2(d); see also 18 U.S.C. § 3572(a).  As the Guidelines make clear, "[t]he amount of the fine should always be sufficient to ensure that the fine, taken together with other sanction imposed, is punitive."  USSG § 5E1.2(d).  Here, the Guidelines range for a fine against defendant is $5,000 to $50,000.  (PSR ¶ 107; USSG §§ 5E1.2(c)(3) and (h)(1).)

        1.   <u>Defendant has the ability to pay a fine</u>

The USPO concluded that, "[b]ased on [defendant's] reported financial statement, it does not appear that he has the ability to make full restitution as agreed upon in the plea agreement.  In addition, given that he has a minor child to support, it does not appear that he has the ability to pay a fine in addition to restitution."  (PSR ¶ 95.)

The government submits, however, that defendant can and should pay a fine.  First, the government is troubled by defendant's submission to the USPO of a "partially completed Personal Financial Statement" that was not signed.  (Id. ¶ 87.)  According to the USPO, "defendant has not complied with the provisions of [General Order 03-01, which mandates certain financial disclosures to the Probation Officer], in that he did not provide a signed PFS, did not provide

7

all of the requested financial supporting documentation, and did not sign any consent for credit report." (Id. ¶ 89.) On this basis alone, the Court should find that defendant has failed to establish an inability to pay a fine. Second, defendant's monthly income appears to be understated in the PSR. At paragraph 83, the PSR states that defendant "earns $220,000 per year[,]" and that he provided a 2019 W-2 form indicating that he earned $135,360 from this employment," but that he "currently has a gross monthly salary of $6,000." These numbers do not add up; a gross monthly salary of $6,000 is only $72,000. Third, defendant's assets also appear to be understated; paragraph 87 in the PSR reflects that defendant only has assets totaling $20,000 (including a $2,800 Rolex), but at paragraph 90, the PSR notes that a May 31, 2020 IRA statement from a Pershing Advisor Solutions LLC account had a value of $141,949.61. And, at paragraph 91, the PSR notes that defendant "made a $168,000 investment into Fetch." Accordingly, it appears that defendant could divest some of these assets in order meet his restitution obligation and pay a fine. Fourth, the PSR notes that defendant's "[e]ntertainment, private schooling, extra-curricular and gym membership expenses account for more than $3,500 per month." The amount of money defendant spends on those luxury expenses could be applied toward a monthly payment of a fine.

**IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION PURSUANT TO THE 18 U.S.C. § 3553(a) FACTORS**

The government recommends a low-end Guidelines sentence of 24 months of imprisonment. The government's recommendation is appropriate and justified in light of the factors set forth under 18 U.S.C. § 3553(a), namely, the nature and circumstances of the

offense, the history and characteristics of defendant, the need for the sentence to reflect the seriousness of the offense and to afford adequate deterrence to criminal conduct, and the need to avoid unwarranted sentencing disparities.

First, the nature and circumstances of the offense are serious. See 18 U.S.C. § 3553(a)(1). After a $3.5 million civil judgment enforcing a FINRA award was entered against defendant, defendant filed for bankruptcy in what appears to have been an effort to avoid paying his former employer, Barclays. While it is understandable why an individual might file for bankruptcy after the entry of such a judgment against him, what is inexcusable is defendant's deceitful conduct to the bankruptcy court during the course of the bankruptcy proceedings. The harm to the bankruptcy system when bankruptcy petitioners engage in such deceit is significant as such conduct undermines the bankruptcy system. Bankruptcy courts in this district deal with thousands of cases per year and rely on debtors to be honest. When debtors fail to do so, the system, along with the debtors' creditors, suffer.

Second, defendant's history and characteristics are also relevant. See 18 U.S.C. § 3553(a)(1). Although defendant appears to generally be law-abiding, defendant has three prior arrests and convictions for failure to appear, driving with a suspended license, and unlicensed driving. (PSR ¶¶ 41-43.) While none of defendant's convictions garnered criminal history points, they appear reflective of an attitude that the rules simply do not apply to defendant. In addition, defendant is a sophisticated investment advisor who has held high-level and high-earning positions at prominent investment firms, including at Barclays. (Id. ¶¶ 83-86.) When his offense of

conviction is viewed with that context in mind, it is evident that defendant's offense appears to have been motivated by pure greed.  In sharp contrast to many similarly situated defendants, defendant has completed a high level of education, including receiving a Bachelor of Arts degree in Political Science with a minor in Military Science from East Carolina University in Greenville, North Carolina.  (PSR ¶ 80.)  Notwithstanding his professional and educational background, defendant chose to undertake well-planned and deceitful actions in his bankruptcy proceedings that cannot merely be swept aside as a one-time lapse in judgment.

Third, the government's recommended sentence addresses the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public from further crimes of defendant.  See 18 U.S.C. § 3553(a)(2).  Given defendant's limited prior contact with law enforcement and the seriousness of defendant's offense, a low-end sentence appropriately strikes the balance of protecting the public from further crimes and deterring defendant and other individuals from committing similar offenses.  With regards to general deterrence, a term of imprisonment is likely to dissuade others who file for bankruptcy from engaging in similar deceitful conduct while bankruptcy proceedings are ongoing.  Finally, a term of imprisonment will help promote respect for the law and impart on defendant that he is not above the law.

Lastly, the government believes that a low-end guideline sentence of 24 months avoids unwarranted sentencing disparities with other defendants in similar circumstances as defendant.  Following consideration of the 3553(a) factors, the government believes a low-end sentence of 24 months is appropriate.

10

**V.   SUPERVISED RELEASE**

In addition to a term of imprisonment of 24 months, the government recommends a three-year term of supervised release.  Given the seriousness of the instant offense and defendant's history and characteristics, the imposition of supervised release would provide a needed additional incentive for defendant to refrain from committing additional crimes and allow the USPO to assist in ensuring that he meets his restitution obligations.

**VI.   RESTITUTION**

Restitution is mandatory in this case pursuant to the Mandatory Victims Restitution Act ("MVRA") of 1996, 18 U.S.C. § 3663A.  (PSR ¶¶ 109.)  As noted in the PSR, the Court should order restitution in the total amount of $336,372.77, in this case, (id. ¶ 109), and in the amount specified for each victim.

**VII. CONCLUSION**

For the foregoing reasons, the government respectfully submits that the Court impose a sentence of 24 months of imprisonment, a three-year term of supervised release, a $100 special assessment, a fine within the applicable fine guideline range, and order restitution in the amount of $336,372.77.